IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Criminal Action Nos.: | 13-83-1-GMS |
| | ) | | 13-83-2-GMS |
| DAVID THOMAS MATUSIEWICZ, | ) | | 13-83-3-GMS |
| LENORE MATUSIEWICZ, and AMY | ) | | |
| GONZALEZ, | ) | | |
| | ) | | |
| Defendants. | ) | | |
| | ) | | |

## **MEMORANDUM**

### I. INTRODUCTION

On August 6, 2013, the Defendants, David Thomas Matusiewicz, Lenore Matusiewicz, and Amy Gonzalez were indicted on four counts of stalking. (D.I. 2.) Presently before the court is David Thomas Matusiewicz's Motion for Recusal pursuant to 28 U.S.C. § 455(a) (D.I. 116), Amy Gonzalez's Motion for Transfer and to Join Supplemental Motions of Co-Defendants (D.I. 115), and Lenore Matusiewicz's Motion for Joinder (D.I. 120).[1]  For the reasons that follow, the court will grant Lenore Matusiewicz's and Amy Gonzalez's Motions for Joinder and grant David Thomas Matusiewicz's Motion for Recusal.[2]

### II. BACKGROUND

The events from which this case arises are detailed in the court's memorandum and order denying David Thomas Matusiewicz's Motion for Transfer of Venue Pursuant to Federal Rule of

---

[1] Because Lenore Matusiewicz's and Amy Gonzalez's Motions for Joinder are being granted, the court will treat David Thomas Matusiewicz's Motion for Recusal as having been filed on behalf of all defendants and refer to his motion as the defendants' motion.

[2] On September 5, 2014, the government filed a brief in support of the defendants' Motion for Recusal which will be discussed herein. (D.I. 121.) Amy Gonzalez filed a Reply in opposition to the government's Motion in support of defendants' motion for Recusal arguing that the government's reasoning for recusal is inapposite to the defendants' positions. (D.I. 122.)

1

Criminal Procedure 21(a). (D.I. 94.) On or about April 23, 2014, while producing documents during discovery, the government produced Discovery Document No. A-0026456 to the Defendants. (D.I. 116 at 3.) On April 29, 2014, the government produced the document to the court via a sealed letter. (*Id.*) As the government explained in a memorandum filed on May 12, 2014, the document is a page from a red notebook that was found in the vehicle with which David Thomas Matusiewicz drove himself and Thomas Matusiewicz to the New Castle County Courthouse on the morning that Thomas Matusiewicz murdered Christine Belford. (D.I. 86 at 8-9.) The document is titled "HL" and consists of a list of names, among which is that of the court. (D.I. 83, Ex. A.) Shortly after the government submitted its memorandum, the *News Journal* published articles titled "Prosecutors: Matusiewicz had 'hit list'" and "Court papers show Matusiewicz 'hit list.'" (D.I. 116, Ex. A.) In the latter article, a law professor stated, regarding Judge Sleet's presence on the list, "if I were defense counsel, I would need to have a conference with that judge." Independent of the good law professor's sage suggestion, on May 5, 2014, the court convened the parties for a teleconference to discuss Discovery Document No. A-0026456. (D.I. 106.) During the teleconference, defense counsel for Ms. Gonzalez made brief mention of a photograph of the presiding Judge included in the red notebook along with the "hit list" recovered by law enforcement.[3] (*Id.*)

### III.  STANDARD

28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might

---

[3]  Mr. Ibrahim stated "there is a picture of Your Honor in there, with initials." (D.I. 106 at 13) Shortly after this, counsel for Mr. Matusiewicz, Mr. Bostic, interrupted Mr. Ibriham. Mr. Bostic stated, "Your Honor, if I may interject, I see two different issues one smaller and one larger, as I said before." (*Id.*) This "interjection" moved the discussion's focus back to the supposed hit list, but not before Mr. Ibriham's mention of the court being "referenced elsewhere in that same booklet with the location of your chambers, how far it is from the courthouse." (*Id.*)

reasonably be questioned." The test for recusal is an objective one, and the judge's subjective bias is not in question. *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004) (citation omitted). Thus, the court must ask "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *Id.*

In keeping with the judge's duty to examine the facts, where a threat is made against the court, recusal is not automatic. *See, e.g.*, *United States v. Cao*, 526 Fed. Appx. 798 (9th Cir. 2013) (explaining that the § 455(a) inquiry does not stop at the mere existence of a threat); *United States v. Greenspan*, 26 F.3d 1001, 1005-06 (10th Cir. 1994) (explaining that, in and of themselves, "threats or attempts to intimidate a judge will not ordinarily satisfy the requirements for disqualification under section 455(a)" unless other facts establish that the threats are serious); *SEC v. Bilzerian*, 729 F. Supp. 2d 19, 24 (D.D.C. 2010) ("[A] threat to a judge, without more, does not ordinarily require recusal."). Rather, courts generally inquire into the seriousness of the threat, the motives behind the threat, and the totality of the circumstances under which the threat is made in determining whether recusal is necessary under § 455(a). *See, e.g.*, *United States v. Dehghani*, 550 F.3d 716, 721 (8th Cir. 2008) (inquiring into the seriousness of the defendant's threat against the judge and the likelihood that the defendant would have been able to carry it out); *United States v. Yu-Leung*, 51 F.3d 1116, 1119-20 (2d Cir. 1995) (inquiring into the seriousness of the threat in affirming the district court's denial of the defendant's motion to recuse); *Bilzerian*, 729 F. Supp. 2d at 24 (denying the defendant's motion because the death threat against the judge was not serious enough to warrant recusal).

### IV. DISCUSSION

The defendants make two main arguments for recusal. First, although they concede that "'HL' gives rise to a number of inferences a reasonable person can draw," they nonetheless argue that the mere possibility of a threat requires recusal. (D.I. 116 at 7 (Arguing that "[a]nyone of

those inferences could lead, an objective yet, informed observer to question the judge's impartiality while presiding over the trial of the murderer's family members on charges that they conspired with the murderer, Thomas Matusiewicz, to kill a target on that list.") Second, the defendants contend that the law professor who offered an opinion in the *News Journal* article regarding Discovery Document No. A-0026456 is an objective observer for the purposes of § 455(a). (*Id.* at 9.) Thus, the defendants suggest, his belief that there may be an appearance of partiality establishes that a reasonable person would conclude that the judge's impartiality might be questionable. (*Id.*)

The government, in support of defendants' motion, similarly does not seem to suggest that the court harbors any actual bias against any of the defendants. Rather, the government argues that the application of the "reasonable person" standard to the facts of this case strongly suggests that an objective observer could reasonably harbor significant doubts about the court's impartiality toward the defendants. (D.I. 121 at 12.)

The court wishes to make clear that the mere joinder by the government in the defendants' motion does not predict the outcome. Indeed, in this instance, the government is rather late to the party. Courts understandably give considerable weight to the government's assessment of the seriousness of a threat in determining whether recusal is necessary. *See, e.g., U.S. v. Yu-Leung*, 51 F.3d 1116, 1119-20 (2d Cir. 1995) (affirming the district court's denial of the recusal motion because, among other things, "[t]he government also told Judge Platt, however, that it did not consider the death threats to be serious."). Similarly, in this case, in its April 29, 2014 letter to the court, the government wrote, "the Government does not believe there is an imminent threat to any of the individuals listed on this document, including to Your Honor." (Undocketed, sealed letter dated April 29, 2014, filed by the government.) This view was repeated during the May 5 teleconference by AUSA McCall. (D.I. 106 at 3.) But it was not until the filing of its brief joining

the defendants' motion that the government expressed a different view and chose to add information that, as previously noted, had only been briefly mentioned during the May 5 teleconference. Allowing for the possibility that the government's view of the merits of the defendants' motion has evolved over the four month period between the teleconference and the filing of its brief, the court is somewhat nonplussed by the government's late mention of additional facts that help inform the court's totality of the circumstances analysis. Indeed, as already mentioned, the existence of this information, along with the interpretation of that information, is especially critical in that effort given that its source is the government.

For the purposes of § 455(a), the reasonable person is not a person ignorant of the context and instead "'understands all the relevant facts' and has examined the record and law." *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008). Thus, "the existence of the appearance of impropriety is to be determined 'not by considering what a straw poll of the only partly informed man-in-the-street would show, but by examining the facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.'" *United States v. Bayless*, 201 F.3d 116, 126-27 (2d Cir. 2000) (citation omitted); *see also Clemens v. United States*, 428 F.3d 1175, 1178 (9th Cir. 2005) ("The 'reasonable person' in this context means a 'well-informed, thoughtful observer,' as opposed to a 'hypersensitive or unduly suspicious person.'") (citation omitted).

Furthermore, as the defendants concede, it is not clear that there is indeed a threat to the court. There is no indication on the face of the Discovery Document No. A-0026456 of what "HL" means. Although it is not unreasonable for some of the parties to surmise in light of the murder of Christine Belford that "HL" means "hit list," this conclusion is nonetheless speculative. Indeed, the defendants have not always unanimously agreed with the interpretation of "HL" as "hit list."

(D.I. 106 at 21-23 (Counsel for Mr. Matusiewicz explaining that he "will argue very strenuously that it is not [a hit list]" and that interpreting "HL" as "hit list" was "the government's assessment of a piece of evidence that is highly questionable and highly suspect.")

Added to the calculus, however, is the revelation in the government's brief that the notebook which contained the supposed hit list also "contained handwritten notes about Defendant David Matusiewicz's criminal case [over which the court presided] and his prior Family Court cases with Christine Belford." (D.I. 121 at 10.) In addition to the first mention by the government in its brief of a photo of the court attached to the notebook, there is the following: "The notebook contained, *inter alia*, phone numbers, addresses, and other information for various people associated with Christine Belford and prior cases." (*Id.*) And this: "Elsewhere in the notebook were other bits of information, such as telephone numbers and addresses, for some of the listed persons." (*Id.*)

This is the kind of information, along with the government's view of its significance, which should have been provided to everyone involved in the case at the outset. This is especially true for the court so that it could exercise its independent judgment in analyzing the merits of the defendants' recusal motion.

In light of the totality of the circumstances and an analysis of all pertinent evidence known to the court at this time, in addition to the fact that all parties agree recusal is necessary, the court finds that the provisions of 28 U.S.C. § 455(a) mandate the court recuse itself.[4]

## V. CONCLUSION

For the foregoing reasons, the court will grant Lenore Matusiewicz's Motion for Joinder,

---

[4] After conferring on the matter, the judges, with the exception of Judge Andrews who is already recused, of the District Court have concluded that under the circumstances the prudent course is to have a judge from outside the District of Delaware preside over this matter. Toward that end, Chief Judge Stark has transmitted a letter to Chief Judge McKee requesting such an assignment.

(D.I. 120); grant David Thomas Matusiewicz's Motion for Recusal (D.I. 116); and grant Amy Gonzalez's Motion for Transfer and Recusal (D.I. 115).

Dated: September 12, 2014

_____
UNITED STATES DISTRICT JUDGE