## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **CRIMINAL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 13-83** |
| **v.** | : | |
| | : | |
| **DAVID THOMAS MATUSIEWICZ et al.,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                 **DECEMBER 21, 2015**

### MEMORANDUM

Defendants David Thomas Matusiewicz, Lenore Matusiewicz, and Amy Gonzalez have been found guilty on charges of stalking that resulted in a death.[1] The Government proved to a jury that Defendants engaged in a prolonged campaign to surveil and harass David Thomas Matusiewicz's ex-wife, Christine Belford. According to the Indictment, David and Christine had divorced in 2006, and a court awarded the parents joint custody of their three children. In 2007, David Matusiewicz and his mother Lenore kidnapped the children and fled to Nicaragua. Authorities returned the children to Christine Belford, and in 2009, David Matusiewicz pled guilty to parental kidnapping and bank fraud. In 2010, Delaware Family Court terminated David Matusiewicz's parental rights. The government contended that after the commencement of federal criminal proceedings against him, David Matusiewicz began making false accusations that Christine Belford sexually abused their children, a charge the Delaware Family Court did not find credible in 2010.

There was evidence at trial that from 2009 to 2013, David Matusiewicz, Lenore Matusiewicz, and David's sister, Amy Gonzalez, conducted a campaign to surveil and harass

---

[1] Defendants David and Lenore Matusiewicz have been found guilty of both cyberstalking and interstate stalking. Defendant Gonzalez was only charged with and found guilty of cyberstalking.

Christine Belford. Evidence was presented that the Defendants posted accusations against Christine Belford online, sent accusations against Belford to the school that one of the children attended and to Belford's church, and solicited their friends' assistance in visiting Belford's home to monitor Belford.

In 2013, David Matusiewicz, Lenore Matusiewicz, and David's father, Thomas Matusiewicz, travelled to Delaware for a family court hearing. At the Delaware New Castle County Courthouse, Thomas Matusiewicz shot and killed Christine Belford and her companion on February 11, 2013 and took his own life.

The prosecution did not charge any of the Defendants with the murder of Christine Belford or conspiracy to commit that murder. Rather, they were charged with offenses related to their alleged surveillance and harassment under of the federal interstate stalking statute, 18 U.S.C. §§ 2261A(1), 2261(b) & 2, and the federal cyberstalking statute, 18 U.S.C. §§ 2261A(2), 2261(b) & 2. The maximum sentence for a violation of these statutes is a sentence of five years, but an enhanced penalty of up to life imprisonment exists "if death of the victim results." 18 U.S.C. § 2261(b)(1).

This case presented an issue of first impression for a federal trial court under the cyberstalking statute—how to define for a jury the proof required to establish that Defendants' conduct caused the victim's death. This supplemental opinion sets forth in more detail the reasoning behind the instruction I gave to the jury.

Because § 2261(b)(1) enhanced the maximum sentences to which the Defendants are exposed in this case, it is an element which must be submitted to the jury and proven beyond a reasonable doubt. See Burrage v. United States, 134 S. Ct. 881, 887 (2014) (citing Alleyne v.

United States, 133 S.Ct. 2151, 2162–63 (2013); Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).

As the Government conceded in its trial brief, there are few decisions that address the "death results" provision under the statute, and, of greater import, none that delineate what the Government must prove to establish that a victim's death "results" from stalking or cyberstalking under § 2261A. See Gov. Trial Br. at 32–33. There are, however, similar "death results" provisions in other federal criminal statutes which have been addressed by appellate courts,[2] including the Supreme Court in Burrage. There, the Court examined such a provision in the Anti-Drug Abuse Act, which created enhanced sentencing penalties for drug distribution charges when "death or serious bodily injury results from the use of [the distributed] substance." Burrage v. United States, 134 S. Ct. at 887 (citing 21 U.S.C. § 841(b)(1)(A)–(C)). For all practical purposes, the statute criminalizing cyberstalking is identical, and the parties agree that Burrage controls here.

In Burrage, the Court concluded that causation required both actual causation (cause-in-fact) and proximate cause: "[w]hen a crime requires 'not merely conduct but also a specified result of conduct,' a defendant generally may not be convicted unless his conduct is 'both (1) the actual cause, and (2) the "legal" cause (often called the "proximate cause") of the result.' " Id. (quoting 1 W. LaFave, Substantive Criminal Law § 6.4(a), pp. 464–66 (2d ed. 2003)). Actual causation requires proof " 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." Burrage, 134 S. Ct. at 887–88 (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2525 (2013)). The Supreme Court did not explain the concept of

---

[2] United States v. Wills, 346 F.3d 476, 498–99 (4th Cir. 2003); United States v. Moonda, No. 07-4191, 2009 WL 3109834, at *1-2 (6th Cir. Sept. 29, 2009); United States v. Bodkins, No. 06-4647, 06-4652, 2008 WL 1776587, at *4-5 (4th Cir. Apr. 18, 2008). See also United States v. Dickens, No. 08-163, 2009 WL 2005287, at *2 (S.D. Ohio July 7, 2009).

proximate cause as it is used in criminal law because it found no actual causation in <u>Burrage</u>, and therefore had no need to reach the question. <u>Id.</u> at 887 ("We find it necessary to decide only the first: whether the use of heroin was the actual cause of Banka's death in the sense that § 841(b)(1)(C) requires.").[3]

> As the Supreme Court aptly characterized the concept in <u>Paroline v. United States</u>:

> The idea of proximate cause ... defies easy summary. It is "a flexible concept" that generally "refers to the basic requirement that ... there must be 'some direct relation between the injury asserted and the injurious conduct alleged. ' " ... Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct. A requirement of proximate cause thus serves, <u>inter alia</u>, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.

134 S. Ct. 1710, 1719 (2014) (citations omitted).

Indeed, proximate cause in the criminal context is often parallel to the concept of proximate cause in the tort context. <u>Id.</u> However, even in the tort context, where much ink has been spilled on the topic of proximate cause, the concept remains a convoluted one. "There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion." Prosser & Keeton, <u>Torts</u>, p. 296 (5th Ed. 1984). Therefore, despite the parallels between tort law and criminal law, in criminal cases, "it is arguable that a closer relationship between the result achieved and that intended or hazarded should be required." 1 W. LaFave, Substantive Criminal Law § 6.4(a) p. 472 (2d ed. 2003).

> The most obvious difference in this regard between the two areas of law, of course, is that in tort law the defendant may be held responsible for harms different than those actually risked by his conduct, while this is generally not the case in the criminal law. It is significant that it is in the limited areas of the criminal law where this is possible—felony-murder and misdemeanor-

---

[3] Various circuit courts have also affirmed that proximate cause is a necessary component of "death results" sentencing enhancements with regard to other criminal statutes that include such provisions. <u>See</u> <u>United States v. Pineda-Doval</u>, 614 F.3d 1019, 1027 n.4 (9th Cir. 2010) (collecting cases).

manslaughter—that there has been the greatest move away from the notion that legal cause in tort cases is controlling.

Id.

In its proposed jury instructions, the Government submitted the following language to the Court for inclusion:  "[W]as Christine Belford's death a reasonably foreseeable result of the offense?  Stated differently, you should decide whether a reasonable person, knowing all of the evidence presented during this trial, would have foreseen that Ms. Belford's death would result from the offense."  Gov. Proposed Jury Instructions at 71–72.  It is understandable that the Government would settle on this language.  The focus on foreseeability is clear from many of the opinions that touch upon the topic of proximate cause in the criminal context.  See, e.g., United States v. Spinney, 795 F.2d 1410, 1416 (9th Cir. 1986) ("It was entirely foreseeable that the conspiracy could lead to the harm . . . ."); United States v. Hayes, 589 F.2d 811, 821 (5th Cir. 1979) ("where events are foreseeable and naturally result from one's criminal conduct, the chain of legal causation is considered unbroken"); Hancock, 2012 WL 1058422, at *2 ("Where such intervening events are foreseeable and naturally result from [the defendant]'s criminal conduct, the defendant is criminally responsible for the resulting harm.") (citations omitted).

I accepted this language as one component of the charge to the jury on proximate causation, but declined to accept it as completely sufficient.  A consistent principle that emerges from the case law on proximate cause is that the connection between the conduct complained of, and the consequences of that conduct, must be a meaningful and not insignificant connection.  Such a relationship was of particular significance in this case, where the direct perpetrator of the murders, having taken his own life, was not on trial, and where a credible argument could be made that he had acted on his own.  Because of this deliberate, intervening conduct on the part of a third-party, proximate cause was a critical element in this case.  Looking at the structure of the

5

cyberstalking statute, one can more readily see situations where the target of harassment might take his or her own life, or where false impressions of the victim created by the public defamation of the victim inspires others to target them. In this case, the cyberstalking conduct— which included harassing videos posted online, letters sent to neighbors, a defamatory website— is less obviously connected to Ms. Belford's death, given that she was murdered by her former father-in-law. The requirement of proximate cause was particularly important as to Defendant Gonzalez, who was in Texas at the time the murders occurred in Delaware.[4]

Accordingly, as to proximate cause, the jury was charged as follows: "was Christine Belford's death the result of the particular offense in a real and meaningful way? This includes your consideration of whether her death was a reasonably foreseeable result of the particular offense and whether her death could be expected to follow as a natural consequence of the particular offense." Jury Instructions at 40.

Under tort law, charging the jury on foreseeability alone would suffice. The instruction here was intended to increase the government's burden by highlighting for the jury the need for there to exist a genuine nexus between the Defendants' conduct and the victim's death. See 1 W. LaFave, Substantive Criminal Law § 6.4(a) p. 472 (2d ed. 2003). In my view, if proximate cause is an essential element for a jury to find as the basis for an enhanced penalty, requiring the government to prove a "real and meaningful" relationship between the wrongful conduct actions and the fatal outcome is a necessary safeguard for Defendants' rights.

Gerald Austin McHugh
United States District Court Judge

---

[4] In practical terms, the "death results" provision in this case embodies the same principles of the felony murder rule, with Defendants participating in the wrongful conduct subject to an enhanced sentence even in the absence of evidence of specific intent to kill.